

FILED

DEC 0 1 2025

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

MICHAEL D PATE and JENNIFER M PATE,
Plaintiffs,

v.

Case No. **1:25-cv-00349-TRM-MJD**

CMG MORTGAGE, INC.;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
and DOES 1–10,
Defendants.

# FIRST AMENDED COMPLAINT TO QUIET TITLE; FOR CONVERSION, FRAUD, UNJUST ENRICHMENT, VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT; DECLARATORY, INJUNCTIVE, AND RELATED RELIEF

Plaintiffs MICHAEL D PATE and JENNIFER M PATE ("Plaintiffs"), for their First Amended

Complaint against Defendants CMG MORTGAGE, INC. ("CMG"), MORTGAGE

ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), and JOHN DOES 1–10

(collectively, "Defendants"), state as follows:

## I.  JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a), because the amount in

controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens

of different states. The amount in controversy includes the value of the requested quiet title and

declaratory relief, restitution of payments made, and punitive damages which, individually and in

the aggregate, plainly exceed $75,000, exclusive of interest and costs.

2.  Plaintiffs are natural persons who are domiciled in, and citizens of, the State of Tennessee.

3.  On information and belief, CMG is a corporation organized under the laws of California with its principal place of business in California and is not a citizen of Tennessee.

4.  On information and belief, MERS is a corporation organized under the laws of the State of Delaware, with its principal place of business in Georgia, and is not a citizen of Tennessee.

5.  The Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367(a), because those claims form part of the same case or controversy as the claims giving rise to diversity jurisdiction.

6.  Venue is proper in this District and Division under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and the real property that is the subject of this action is located in Hamilton County, Tennessee, within the Chattanooga Division.

## II.  PARTIES

7.  Plaintiffs MICHAEL D PATE and JENNIFER M PATE are natural persons residing in Hamilton County, Tennessee. They are the record owners of the real property commonly known as 1323 Pine Burr Lane, Chattanooga, Tennessee 37419, identified as Parcel No. 134L E 006.05 (the "Property").

8.  Defendant CMG MORTGAGE, INC. is, on information and belief, a mortgage lender and/or servicer doing business in Tennessee and throughout the United States. CMG may be served through its registered agent or by any method permitted by law.

9.     Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") is a Delaware corporation that purports to act as nominee and "beneficiary" for lenders and their assigns with respect to mortgage instruments recorded in Tennessee. MERS may be served through its registered agent or by any method permitted by law.

10.     Plaintiffs are presently unaware of the true names and capacities of JOHN DOES 1–10, inclusive, who may claim or appear to claim some interest in the Property or in the alleged indebtedness described in this Complaint. Plaintiffs will amend this Complaint to identify such parties once their identities are ascertained.

## III.  EXHIBITS

11.     The following exhibits are attached hereto and incorporated by reference:

Exhibit A: Certified UCC-11 search (Tennessee Secretary of State) dated August 22, 2025 (no UCC-1 financing statement found under Plaintiffs' names).

Exhibit B: Certified UCC-11 search (Tennessee Secretary of State) dated September 28, 2025 (no UCC-1 financing statement found under Plaintiffs' names post-QWR).

Exhibit C: MERS ServicerID printout indicating Ginnie Mae is listed as investor for Plaintiffs' loan.

Exhibit D: Certified copy of Deed of Trust recorded July 16, 2025, encumbering the Property.

Exhibit E: Plaintiffs' written inquiry and Qualified Written Request ("QWR") dated August 11, 2025.

Exhibit F: Defendants' written response to Plaintiffs' QWR dated August 26, 2025.

Exhibit G/G1: Plaintiffs' mortgage statements and updated payment history, showing payments made under the alleged loan.

## IV. FACTUAL ALLEGATIONS

The Loan and Deed of Trust

12.     On or about July 16, 2025, Plaintiffs executed a promissory note (the "Note") in favor of CMG, which purports to evidence a loan secured by a deed of trust encumbering the Property (the "Deed of Trust").

13.     The Deed of Trust was recorded in the Hamilton County Register of Deeds. A certified copy is attached as Exhibit D.

14.     The Deed of Trust names MERS as "beneficiary" solely as nominee for the lender and the lender's successors and assigns, even though MERS is not the lender, does not advance funds, and has no independent beneficial interest in the Note or the alleged debt.

15.     Following closing, Plaintiffs began receiving monthly mortgage statements demanding payments under the Note and Deed of Trust. The statements identified CMG and/or its agents as the entity entitled to collect payments. Plaintiffs made substantial payments in reliance on those statements. Plaintiffs' payment history is attached as Exhibit G.

16.     At all relevant times, CMG and/or its agents and affiliates have accepted and retained payments from Plaintiffs on the alleged loan.

Securitization, Ginnie Mae, and Split Interests

17.   On information and belief, shortly after closing, CMG and/or its affiliates pooled Plaintiffs' loan with other loans and sold or assigned the beneficial interest in the resulting loan receivables into a Ginnie Mae–guaranteed securitization or similar secondary market transaction.

18.   In that securitization structure, the economic and beneficial interest in the receivables arising from Plaintiffs' payments was transferred to investors and/or Ginnie Mae, while CMG retained, at most, servicing rights and the ability to collect payments on behalf of undisclosed third parties.

19.   As part of this process, Plaintiffs' Note and the associated receivables were treated as financial assets to be monetized, pledged, or sold, and CMG and/or its affiliates obtained funding, proceeds, and other financial benefits based upon Plaintiffs' promise to pay.

20.   On information and belief, the proceeds and benefits CMG and its affiliates obtained in connection with the securitization, guarantees, or sale of Plaintiffs' loan receivables were calculated by reference to, and were intended to cover, the same principal balance and payment stream that CMG and its agents continue to demand from Plaintiffs.

21.   At the same time, the Deed of Trust has remained of record in the name of CMG and/or MERS, and no assignment to any Ginnie Mae trust, trustee, or investor has been recorded in the Hamilton County land records.

22.   As a result, one set of parties (Ginnie Mae and/or securitization investors) holds or claims the beneficial and economic interest in the Note/receivables, while a different set of parties (CMG and MERS) appears of record as lender, beneficiary, or nominee under the Deed of Trust and as the party demanding payments from Plaintiffs.

23.    This split and separation of interests between (a) the economic owner of the Note and receivables and (b) the parties appearing in the land records and on monthly statements has created a broken and incomplete chain of title and enforcement authority such that no single party has demonstrated that it both (i) owns or represents the owner of the debt and (ii) holds a valid, enforceable lien on the Property.

MERS Investor Listing and Plaintiffs' QWR

24.    Plaintiffs performed a MERS ServicerID search using the Mortgage Identification Number associated with their loan. The printout obtained from MERS lists Ginnie Mae as the "investor" for Plaintiffs' loan. This printout is attached as Exhibit C.

25.    On or about August 11, 2025, Plaintiffs sent a written correspondence to CMG and/or the loan servicer that constituted, among other things, a detailed, written inquiry and Qualified Written Request ("QWR") (Exhibit E). Plaintiffs specifically requested identification of the current owner and investor of the loan and documentation of the authority of any party claiming the right to collect on or enforce the Note and Deed of Trust.

26.    On or about August 26, 2025, Defendants, or their agents, sent a written response to the QWR (the "QWR Response") on CMG letterhead, addressed to Plaintiffs at 1323 Pine Burr Lane, Chattanooga, Tennessee 37419. The QWR Response identified the loan servicer and confirmed continued collection activity, but did not disclose that Ginnie Mae is listed as investor in the MERS system and did not clearly identify the true owner of the alleged debt. Nor did the response provide any chain-of-title documentation or custodial records showing who presently owns and is entitled to enforce the Note. The QWR Response is attached as Exhibit F.

27.    In the QWR Response, Defendants chose to respond substantively to Plaintiffs' written

questions, but omitted the material fact that Ginnie Mae is identified as investor for Plaintiffs'

loan in the MERS database (Exhibit C) and failed to disclose any trust, trustee, or investor

structure holding the beneficial interest in Plaintiffs' loan, despite being directly asked to identify

the owner/investor and the party entitled to enforce the Note.

28.    By voluntarily choosing to respond to the QWR and purport to answer Plaintiffs' specific

questions about ownership, investor status, and enforcement authority, Defendants assumed a

duty not to materially mislead Plaintiffs or conceal critical facts concerning who owns the debt

and who is entitled to enforce it.

29.    The existence and identity of the true owner/investor of the alleged debt, and the authority

of any party to enforce the Note and Deed of Trust, are material facts that directly impact

Plaintiffs' obligations, risk of foreclosure, and exposure to conflicting claims.

UCC-11 Searches and Lack of Transparency

30.    Plaintiffs obtained a certified UCC-11 search from the Tennessee Secretary of State dated

August 22, 2025, covering their names, which showed no UCC-1 financing statement filed under

Plaintiffs' names in relation to the alleged loan or note. This certified search is attached as

Exhibit A.

31.    After sending the QWR and allowing additional time for Defendants to cure any

deficiencies, Plaintiffs obtained a second certified UCC-11 search dated September 28, 2025,

again showing no UCC-1 financing statement filed under Plaintiffs' names. This certified search

is attached as Exhibit B.

32. These certified searches confirm that, at least under Plaintiffs' names as debtors, no financing statements have been filed that would reveal the structure of any sale, assignment, or pledge of Plaintiffs' loan receivables as "accounts" or "payment intangibles" under Article 9 of the Uniform Commercial Code.

33. To date, Defendants have never provided Plaintiffs with any chain-of-title documents, custodial records, or investor schedules establishing:

 (a) who presently owns the debt evidenced by the Note;

 (b) who is in lawful possession of the original Note and any allonges;

 (c) how enforcement rights were transferred, if at all, under applicable Article 3 provisions; and

 (d) the terms of any Article 9–governed transfers of the receivables or payment intangibles.

34. Prior to this litigation, Defendants did not present Plaintiffs with the original Note accompanied by a complete, documented chain of endorsements and custodial records proving that CMG, MERS, or any related entity was the "person entitled to enforce" the Note within the meaning of Tennessee's version of UCC Article 3.

Reliance and Harm

35. Plaintiffs reasonably relied on Defendants' monthly statements and the QWR Response as implying that CMG and/or its disclosed servicer were lawfully entitled to collect payments and enforce the Note and Deed of Trust.

36. In reliance on Defendants' representations and omissions, Plaintiffs continued making payments they otherwise would not have made to CMG and its agents, including at least

$11,850.84 in year-to-date payments as of the filing of this suit, and additional payments thereafter, suffered financial loss, and face a continuing cloud on title and risk of adverse claims to the Property.

37. Plaintiffs are currently unable to determine with confidence which entity, if any, holds both the right to receive payments and the right to enforce the Deed of Trust. This uncertainty impairs Plaintiffs' ability to refinance, sell, or otherwise convey clear title to the Property, exposes them to the risk of competing demands or duplicative collection efforts, and forces them either to continue paying an entity that may lack enforcement authority or risk defaulting to the true holder. These are present, ongoing harms, not merely speculative future injuries.

38. Defendants presently assert and rely upon the Deed of Trust as a valid lien securing the alleged indebtedness and retain the contractual right to foreclose upon any asserted default. As long as the Deed of Trust remains of record in favor of these Defendants, Plaintiffs' title is clouded and their risk of adverse enforcement remains current and ongoing, not hypothetical.

39. Plaintiffs bring this action to quiet title, obtain declaratory and injunctive relief, and recover damages for conversion, fraud, unjust enrichment, and violations of the Tennessee Consumer Protection Act.

## V. APPLICABLE LAW (SUMMARY)

40. Under Tennessee law, only a "person entitled to enforce" a negotiable instrument may enforce it, which generally requires possession of the instrument with proper endorsements or compliance with provisions governing lost instruments. See Tenn. Code Ann. § 47-3-301.

41. Borrowers may challenge whether a party seeking to enforce a note or foreclose a deed of trust actually has authority to do so, including by attacking assignments and chains of title that

go to enforcement rights. See Thompson v. Bank of Am., N.A., 783 F.3d 1022, 1026–27 (6th Cir. 2015) (applying Tennessee law).

42.   Tennessee recognizes claims for fraud and fraudulent concealment where a party, having undertaken to speak, omits or suppresses material facts in a manner that misleads another, resulting in reliance and damages. See Hodge v. Craig, 382 S.W.3d 325,  342–44 (Tenn. 2012); Pope v. Redwing, 370 S.W.3d 708, 724–26 (Tenn. 2012).

43.   Tennessee also recognizes unjust enrichment where a defendant has been enriched at the plaintiff's expense under circumstances that make it unjust to retain the benefit, even in the absence of an express contract between the parties. See Whitehaven Cmty. Baptist Church v. Holloway, 973 S.W.2d 592, 596 (Tenn. 1998).

44.   The Tennessee Consumer Protection Act ("TCPA") is a remedial statute intended to protect consumers from unfair or deceptive acts or practices and is to be liberally construed in favor of consumers. See Morris v. Mack's Used Cars, 824 S.W.2d 538, 540–41 (Tenn. 1992); Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005).

45. Under longstanding Supreme Court precedent, the promissory note and the mortgage (or deed of trust) are treated together, with the note as the essential obligation and the security instrument as an incident that follows it. An assignment of the note carries the mortgage or deed of trust with it, while an assignment of the security instrument alone is ineffective to transfer enforcement rights. See, e.g., Carpenter v. Longan, 83 U.S. 271, 274 (1872).

46. Consistent with this principle, courts applying Tennessee law have recognized that any assignment of a note automatically transfers beneficial ownership of the accompanying deed of

trust and that the lien of a mortgage or trust deed passes, without a separate assignment, to the party entitled to enforce the note.

## VI. CAUSES OF ACTION

COUNT I – QUIET TITLE / DECLARATORY RELIEF:

LACK OF STANDING / AUTHORITY TO ENFORCE / SPLIT INTERESTS

47.   Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

48.   Plaintiffs are the record owners of the Property and are in actual, peaceable possession.

49.   Defendants claim or appear to claim an interest in the Property by virtue of the Deed of Trust and the alleged indebtedness but have not demonstrated that they are persons entitled to enforce the Note under Tennessee's enactment of UCC Article 3. Tennessee courts require such a showing before enforcement. See Tenn. Code Ann. § 47-3-301; Thompson v. Bank of Am., N.A., 783 F.3d 1022, 1026–27 (6th Cir. 2015).

50.   On information and belief, the Note and/or the receivables arising from Plaintiffs' payments have been sold, assigned, pledged, or otherwise transferred into a securitization or Ginnie Mae–backed structure such that the beneficial and economic interest in the payment stream belongs to investors and/or Ginnie Mae, not CMG or MERS.

51.   CMG and MERS, however, continue to appear of record as lender, beneficiary, or nominee under the Deed of Trust and continue to demand and accept payments from Plaintiffs as if they themselves were the ultimate owners and persons entitled to enforce the Note.

52. By structuring the transaction so that (a) one set of parties holds the economic interest in the Note and receivables and (b) a different set of parties appears in the land records and on monthly statements as "lender," "beneficiary," or "servicer," Defendants have created a separation of interests that obscures who, if anyone, presently holds both ownership of, or authority for, the debt and lawful authority to enforce the Deed of Trust.

53. On information and belief, based on the MERS investor listing identifying Ginnie Mae as investor and the absence of any recorded assignment to any Ginnie Mae trust, trustee, or investor in the Hamilton County land records, CMG and MERS are, at most, servicers or nominees for undisclosed investors and are not themselves the persons entitled to enforce the Note as against Plaintiffs.

54. Consistent with Carpenter and Tennessee authority, any enforceable interest in the Deed of Trust can exist only in favor of a party who is entitled to enforce the Note itself; the security instrument cannot be enforced independently of the debt it secures. A party claiming rights under the Deed of Trust but unable to demonstrate that it is a "person entitled to enforce" the Note holds, at most, an assignment of the security instrument alone, which does not confer an independent right to foreclose against Plaintiffs' Property.

54A. Independently of the securitization and split-interest issues, Exhibits A and B show that no UCC-1 financing statement has been filed under Plaintiffs' names in connection with any sale, assignment, or pledge of the Note and related receivables as 'accounts' or 'payment intangibles' governed by Article 9. To the extent Defendants or their principals seek to rely on any Article 9 transfer or classification of the Note and receivables, the absence of a corresponding, properly filed financing statement is a separate and additional basis to conclude that no perfected security interest in the underlying obligation has been shown in favor of these Defendants.

55. On information and belief, CMG and its affiliates have already received substantial value, proceeds, or funding in connection with the securitization, guarantees, or sale of Plaintiffs' loan receivables, yet Defendants continue to demand full payment from Plaintiffs on the same underlying obligation.

56. In light of the securitization, Ginnie Mae's investor status as reflected in the MERS records, and the absence of any clear, documented chain of transfers into and out of the securitization vehicle in the land records, a real, present controversy exists as to who, if anyone, is a person entitled to enforce the Note and hold a valid lien against the Property.

57. Plaintiffs are entitled to a declaration that:

(a) Defendants have not established that they are persons entitled to enforce the Note as against Plaintiffs; and

(b) the Deed of Trust is unenforceable as a lien in favor of these Defendants unless and until they establish that they are persons entitled to enforce the Note and hold a corresponding beneficial interest in the lien.

58. Plaintiffs further seek an order quieting title in their favor as against any interest in the Property claimed by CMG, MERS, and JOHN DOES 1–10.

COUNT II – CONVERSION OF INSTRUMENT AND PAYMENTS (ALTERNATIVE THEORY)

(Tennessee UCC Article 3 and Equitable Restitution)

59. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

60. This Count is pleaded in the alternative to Plaintiffs' quiet title and declaratory claims. To the extent the Court determines that a person or entity other than CMG and MERS is, or was at

relevant times, the person entitled to enforce the Note, then CMG and its agents wrongfully collected and retained Plaintiffs' payments without being entitled to enforce the instrument, which constitutes conversion under Tennessee's enactment of UCC § 3-420 and related equitable principles.

61. Plaintiffs made payments to Defendants in the good-faith but mistaken belief that Defendants, or their disclosed principals, were lawfully entitled to enforce the Note and collect those payments.

62. On information and belief, Defendants have not established that they are persons entitled to enforce the Note within the meaning of Tennessee's version of UCC Article 3 but nonetheless demanded and accepted payments from Plaintiffs.

63. Under Tennessee's enactment of UCC § 3-420 and related principles, acceptance of payment on an instrument by a party who is not a person entitled to enforce the instrument may constitute conversion.

64. On information and belief, CMG and related entities have already received value, proceeds, or funding in connection with the securitization, sale, or pledge of the receivables arising from Plaintiffs' Note, such that they have been compensated at least once for the same payment stream they continue to demand from Plaintiffs.

65. By accepting and retaining Plaintiffs' payments on top of the proceeds and benefits obtained from securitizing and selling the same receivables, Defendants have exercised dominion over funds to which they are not lawfully entitled, supporting a claim for conversion and an equitable right to restitution.

66.    Plaintiffs are entitled to restitution of all sums wrongfully collected and converted, in an amount to be determined at trial, together with interest.

## COUNT III – FRAUD AND FRAUDULENT CONCEALMENT

67.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

68.    Plaintiffs' written inquiry and QWR (Exhibit E) directly and specifically asked Defendants to identify the owner and investor of the loan and to provide evidence of the authority of any party claiming the right to enforce the Note and Deed of Trust.

69.    On or about August 26, 2025, in a written QWR Response on CMG letterhead sent to Plaintiffs at 1323 Pine Burr Lane, Chattanooga, Tennessee 37419 (Exhibit F), Defendants stated, in substance, that a particular entity was the servicer and that Plaintiffs should continue to make payments as billed, while omitting the material fact that Ginnie Mae was identified as investor for Plaintiffs' loan in the MERS database (Exhibit C) and failing to disclose any trust, trustee, or investor structure holding the beneficial interest in the loan.

70.    By choosing to respond to Plaintiffs' written questions, Defendants assumed a duty not to mislead Plaintiffs or conceal material facts in that written response. Defendants' half-truths and omissions were materially misleading under the circumstances.

71.    In addition to voluntarily undertaking to speak, Defendants and/or their servicer had statutory and contractual obligations, including duties arising under 12 U.S.C. § 2605(e) and related servicing standards, to provide a reasonably complete and non-misleading written response to Plaintiffs' Qualified Written Request regarding the ownership and servicing of the loan. Having chosen to respond in writing to Plaintiffs' specific questions about ownership, investor status, and enforcement authority, Defendants had a duty not to omit material facts in a

way that rendered their response deceptive or misleading. For avoidance of doubt, Plaintiffs do not assert a standalone cause of action under RESPA; references to 12 U.S.C. § 2605(e) are pled solely as part of the factual and legal context for Defendants' duties relevant to Plaintiffs' common-law fraud and concealment claims.

72. The existence and identity of the true owner/investor of the debt, and the authority of any party to enforce the Note and Deed of Trust, are material facts a reasonable homeowner would rely upon in deciding whether to continue making payments and in evaluating the risk of foreclosure or competing claims.

73. Defendants knew, or recklessly disregarded, that Ginnie Mae was identified as investor for Plaintiffs' loan in MERS and that securitization and investor arrangements existed, yet chose not to disclose those facts in the QWR Response or monthly statements.

74. Defendants intended that Plaintiffs rely on the QWR Response and monthly statements as confirmation that CMG and/or its agents were lawfully entitled to enforce the Note and collect payments.

75. Plaintiffs reasonably relied on Defendants' written communications and omissions by continuing to make payments to CMG and its agents.

76. Had Defendants accurately disclosed that Ginnie Mae was listed as investor and that securitization and investor arrangements existed, Plaintiffs would have taken different actions, including but not limited to: disputing the accuracy of subsequent monthly statements; demanding strict proof of Defendants' status as persons entitled to enforce the Note; escrowing or redirecting payments pending clarification; and seeking earlier judicial relief to resolve the conflicting interests. Instead, Plaintiffs continued to make payments directly to Defendants and

delayed seeking court intervention, thereby sustaining additional monetary losses, incurring out-of-pocket expenses to investigate the true status of the loan, and remaining exposed to a continuing cloud on title.

77.    As a direct and proximate result, Plaintiffs suffered damages, including but not limited to:

(a) payments wrongfully induced and collected;

(b) a cloud on title and impairment of the marketability of the Property;

(c) exposure to conflicting or uncertain claims to the alleged debt and lien; and

(d) time, expense, and distress in investigating and addressing the securitization and ownership issues.

78.    These allegations satisfy the elements of fraud and fraudulent concealment as articulated by the Tennessee Supreme Court. See Hodge, 382 S.W.3d at 342–44; Pope, 370 S.W.3d at 724–26.

79.    Under Tennessee law, punitive damages may be awarded only upon clear and convincing proof that the defendant acted intentionally, fraudulently, maliciously, or recklessly. See Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992); Tenn. Code Ann. § 29-39-104(a)(1). The conduct alleged herein—intentional concealment of the true investor, misleading written responses to Plaintiffs' direct inquiries about ownership and enforcement authority, and continued collection activity despite split and undisclosed interests—meets this standard.

80.    Plaintiffs seek punitive damages under Tennessee law in an amount to be determined by the trier of fact, but consistent with Tenn. Code Ann. § 29-39-104, which ordinarily limits punitive damages to the greater of two times the compensatory award or $500,000 per plaintiff. In light of the intentional and fraudulent nature of Defendants' conduct as alleged herein, Plaintiffs allege that an award of at least $500,000 in punitive damages is appropriate to punish and deter such misconduct.

COUNT IV – UNJUST ENRICHMENT / RESTITUTION

81. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

81A. This claim is pled in the alternative to Plaintiffs' contract-related theories. To the extent Defendants contend that any enforceable contractual obligations run in favor of some other owner, investor, or person entitled to enforce the Note, then Defendants have nonetheless retained the benefits of securitization proceeds and Plaintiffs' payments without a valid contractual entitlement as against Plaintiffs, making unjust enrichment an appropriate and necessary remedy.

82. By securitizing, selling, or otherwise monetizing the receivables arising from Plaintiffs' Note, Defendants and/or their affiliates received substantial financial benefits based on Plaintiffs' promise to pay, including proceeds, guarantees, and funding from investors and Ginnie Mae–backed structures.

83. Despite having already received that benefit, Defendants have continued to demand and collect the full payment stream directly from Plaintiffs, effectively obtaining multiple recoveries on the same underlying debt obligation.

84. Defendants have been enriched at Plaintiffs' expense by both (a) the securitization-related benefits and (b) the ongoing collection of payments from Plaintiffs, under circumstances where Defendants have not clearly demonstrated any remaining, undischarged right to enforce the alleged debt as against Plaintiffs.

85. Under Tennessee unjust enrichment law, such circumstances support a claim for unjust enrichment and restitution. See Whitehaven, 973 S.W.2d at 596. It would be inequitable and unjust to allow Defendants to retain both the securitization-related benefits and Plaintiffs' direct

payments without an accounting and without proof that any further enforcement right remains in favor of these Defendants.

86.    Plaintiffs are therefore entitled to restitution of all sums paid to Defendants on the alleged debt, to the extent such payments constitute an unfair multiple recovery, in an amount to be proven at trial.

COUNT V – VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT
 (Tenn. Code Ann. § 47-18-101 et seq.)

87.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

88.    Defendants' conduct occurred in the course of trade and commerce within the meaning of the Tennessee Consumer Protection Act, in that it involved the advertising, origination, servicing, and collection of a consumer mortgage loan secured by Plaintiffs' residence. Plaintiffs are consumers, and Defendants regularly engage in such mortgage lending and servicing transactions with the public as part of their business.

89.    Defendants, in the course of trade and commerce, engaged in unfair and deceptive acts and practices, including but not limited to:
 (a) issuing monthly statements and collection demands implying Defendants themselves were lawfully entitled to enforce the Note and collect payments, despite having transferred beneficial or economic interests in the loan to undisclosed third parties, including through securitization and without clearly disclosing the true owner of the debt;
 (b) responding to Plaintiffs' written inquiry and QWR in a manner that concealed Ginnie Mae's investor role and omitted material facts about the securitization and ownership structure;
 (c) continuing to demand and accept payments from Plaintiffs after having already received

substantial proceeds and benefits from securitizing and selling the same receivables; and

(d) failing to clarify who, if anyone, holds both the right to payments and the right to enforce the lien against the Property.

90.  These acts and practices are unfair and deceptive within the meaning of the Tennessee Consumer Protection Act and have caused actual damages to Plaintiffs, including monetary loss, clouded title, and the risk of paying entities that may lack lawful enforcement authority. The TCPA is to be liberally construed in favor of consumers. See Morris, 824 S.W.2d at 540–41; Tucker, 180 S.W.3d at 115.

91.  Plaintiffs are entitled to relief under the TCPA, including recovery of actual damages, potential treble damages in appropriate circumstances, and reasonable attorney's fees and costs, pursuant to Tenn. Code Ann. § 47-18-109.

COUNT VI – SUPPLEMENTAL DECLARATORY AND INJUNCTIVE RELIEF

92.  Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

93.  An actual, justiciable controversy exists between the parties as to:

(a) who, if anyone, is a person entitled to enforce the Note;

(b) whether the Deed of Trust is a valid and enforceable lien against the Property in favor of these Defendants;

(c) the legality of past collection activity and application of Plaintiffs' payments; and

(d) Plaintiffs' title to the Property as against these Defendants.

94.  Plaintiffs seek declarations that:

(a) Defendants have not established that they are persons entitled to enforce the Note as against Plaintiffs;

(b) the Deed of Trust is unenforceable as to these Defendants and should be released of record to the extent of any claim asserted by them;

(c) Plaintiffs' prior payments were wrongfully demanded and collected to the extent they constitute an unjust multiple recovery; and

(d) Plaintiffs hold good and clear title to the Property, free and clear of any interest claimed by these Defendants.

95.     Plaintiffs further seek temporary, preliminary, and permanent injunctive relief prohibiting Defendants, and anyone acting in concert with them, from initiating or continuing any foreclosure, sale, assignment, transfer, or other disposition of the Property, and from engaging in further collection activity related to the alleged debt, during the pendency of this action and thereafter to the extent consistent with the Court's declaratory judgment.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs MICHAEL D PATE and JENNIFER M PATE respectfully pray that this Court:

A.     Enter judgment quieting title in favor of Plaintiffs and declaring that CMG, MERS, and JOHN DOES 1–10 have no enforceable lien or interest in the Property as against Plaintiffs unless and until they establish that they are persons entitled to enforce the Note and hold a corresponding beneficial interest in the lien;

B.     Declare that Defendants have not established that they are persons entitled to enforce the Note under Tennessee's enactment of UCC Article 3 as against Plaintiffs;

C.   Declare that the Deed of Trust is unenforceable as a lien in favor of these Defendants and order its release and removal as a cloud on Plaintiffs' title to the extent of any claim asserted by them;

D.   Award Plaintiffs restitution of all payments wrongfully collected from them on the alleged debt, in an amount to be proven at trial;

E.   Award Plaintiffs compensatory damages for conversion, fraud, unjust enrichment, and violations of the Tennessee Consumer Protection Act;

F.   Award Plaintiffs punitive damages under Tennessee law, pursuant to Hodges v. S.C. Toof & Co., 833 S.W.2d 896 (Tenn. 1992), and Tenn. Code Ann. § 29-39-104, in an amount to be determined by the trier of fact but not less than $500,000, reflecting the statutory punitive-damages benchmark for egregious intentional or fraudulent misconduct;

G.   Award Plaintiffs treble damages, attorney's fees, and costs as permitted under the TCPA, Tenn. Code Ann. § 47-18-109;

H.   Issue temporary, preliminary, and permanent injunctive relief prohibiting any foreclosure, sale, assignment, transfer, or other disposition of the Property and prohibiting further collection activity by Defendants related to the alleged debt, consistent with the Court's declaratory judgment; and

I.   Grant such other and further legal and equitable relief as the Court deems just and proper.

Dated: December 1, 2025.

Respectfully submitted,

/s/ Michael D Pate
Michael D Pate, Pro Se

/s/ Jennifer M Pate
Jennifer M Pate, Pro Se
1323 Pine Burr Lane
Chattanooga, TN 37419
423-463-5548
Michael_p25@icloud.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on December 1, 2025, by

electronic mail on all counsel of record at the email addresses previously used by counsel in this

case at Bradley Arant Boult Cummings LLP:

kluckett@bradley.com

jodubeko@bradley.com

jsockwell@bradley.com


/s/ Michael D Pate
Michael D Pate, Pro se Plaintiff
1323 Pine Burr Lane
Chattanooga, Tennessee 37419