UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| MICHAEL D. PATE and JENNIFER M. PATE, | ) ) | Case No. 1:25-cv-349 |
| | ) | |
| *Plaintiffs*, | ) | Judge Travis R. McDonough |
| | ) | |
| v. | ) | Magistrate Judge Michael J. Dumitru |
| | ) | |
| CMG MORTGAGE, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., *et al.*, | ) ) ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION**

Before the Court are Defendants CMG Mortgage, Inc.'s ("CMG") and Mortgage

Electronic Registration Systems, Inc.'s ("MERS") (collectively, "Defendants") motion to dismiss

Plaintiffs Michael D. Pate and Jennifer M. Pate's first amended complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6) (Doc. 30). For the reasons set forth below, Defendants' motion

to dismiss is **GRANTED** and Plaintiffs' first amended complaint is **DISMISSED WITH**

**PREJUDICE**.[1]

I.    **BACKGROUND**

On July 16, 2025, Plaintiffs Michael D. Pate and Jennifer M. Pate ("Plaintiffs") executed

a promissory note (the "Note") in the principal amount of $443,157.00 in favor of "CMG

---

[1] Prior to Plaintiffs filing their amended complaint, Defendants filed a motion to dismiss the original complaint on November 20, 2025. (Doc. 18.) Because the Plaintiffs have since filed an amended complaint, the Defendants' original motion to dismiss (Doc. 18) is **DENIED as moot**. Additionally, Plaintiffs' motion to set a Rule 26(f) conference (Doc. 37), and Defendants' motion to stay a Rule 26(f) conference (Doc. 39) are also **DENIED as moot**.

Mortgages, Inc. dba CMH Home Loans" and a corresponding Deed of Trust (the "Deed of Trust") encumbering their real property located at 1323 Pine Burr Lane, Chattanooga, Tennessee 37419 (the "Property"). (*See* Doc. 26, at 2, 4; Doc. 26-4 at 1–2; Doc. 31-1, at 1.) The Deed of Trust names MERS as "the beneficiary to [the] security agreement" and was duly recorded in the Hamilton County Register of Deeds on July 18, 2025. (*See* Doc. 26, at 1, 4; Doc. 26-4, at 1–2.)

Plaintiffs conducted a MERS ServicerID search using their mortgage identification number and found that MERS "listed Ginnie Mae as the 'investor' for Plaintiff's loans." (Doc. 26, at 6; *see also* Doc. 26-3.) Ginnie Mae is not specifically listed as a beneficiary in the Deed of Trust, and Plaintiffs claim that a separate assignment to Ginnie Mae has not been recorded in the Hamilton County land records. (*See* Doc. 26, at 5–6.)

On August 11, 2025, Plaintiffs submitted a Qualified Written Request ("QWR") to CMG requesting, among other things, identification of the current owner and investor of the loan, the original Note and "[c]omplete chain of assignments of the mortgage/deed of trust," securitization documents, and life-of-loan payment histories. (*See id.* at 6; Doc. 26-5, at 2–3.) CMG responded in writing on August 26, 2025, identifying CMG Mortgage, Inc., as the loan owner, confirming its servicer status, providing a copy of a "Notice of Assignment, Sale or Transfer of Servicing," and declining to produce investor identity information on the grounds that such information was "beyond the scope permitted" by the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"). (Doc. 26-6, at 1–2, 9.) CMG also enclosed a copy of the Deed of Trust as well as the loan transaction history in its response to Plaintiffs' QWR. (*Id.* at 1, 5; Doc. 26–7, at 1–2.)

Plaintiffs separately obtained two certified UCC-11 searches from the Tennessee Secretary of State, dated August 22, 2025, and September 28, 2025, both of which "showed no

UCC-1 financing statement file under Plaintiffs' names in relation to the alleged loan or note." (Doc. 26, at 7; *see also* Docs. 26-1; 26-2.)  As of the filing of the suit, Plaintiffs' year-to-date payments in 2025 totaled $11,850.84, and Plaintiffs claim they made additional payments to CMG thereafter.  (Doc. 26, at 8–9; Doc. 26-7, at 2.)

Plaintiffs initiated this action pro se on October 9, 2025, in Hamilton County Chancery Court.  (*See* Doc. 1-1, at 12.)  Defendants filed a notice of removal to this Court on November 13, 2025.  (*See* Doc. 1).  Plaintiffs amended their complaint on December 1, 2025.  (Doc. 26).  In the operative complaint (Doc. 26), Plaintiffs assert the following six causes of action:  (1) quiet title/declaratory relief; (2) conversion; (3) fraud and fraudulent concealment; (4) unjust enrichment/restitution; (5) violations of the Tennessee Consumer Protection Act, § 47-18-101 et seq. ("TCPA"); and (6) supplemental declaratory and injunctive relief.[2]  (*See* Doc. 26, at 11–24.)

Plaintiffs seek "restitution of all payments wrongfully collected from them on the alleged debt, in an amount to be proven at trial," compensatory damages for the conversion, fraud, unjust enrichment, and TCPA claims, punitive damages in the amount of $500,000, and "temporary, preliminary, or permanent injunctive relief prohibiting any foreclosure, sale, . . . or other disposition of the Property."  (*Id.* at 22.)  Defendants moved to dismiss Plaintiffs' operative complaint for failure to state a claim on December 15, 2025.  (Doc. 30.)  The motion is now ripe for review.

## II.     LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 8(a)(2)

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short

---

[2] The Court notes that "counts" 1 and 6 are not technically causes of action as stated in the amended complaint, but rather are requests for relief.  (*See* Doc. 26, at 11, 20.)

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[Rule 8] demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the truth of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of truth, however, does not extend to legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. The factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a

4

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## B. Federal Rule of Civil Procedure 9(b)

Rule 9(b) applies in cases in which a plaintiff alleges fraud and requires that "a party [] state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b); *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006). "To plead fraud with particularity, the plaintiff must allege: (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011) (quotations and citation omitted); *see also Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614–15 (6th Cir. 2024) (requiring plaintiff to "specify the 'who, what, when, where, and how' of the alleged fraud).

The purposes of Rule 9(b) are to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and fraudulent behavior." *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 838 F.3d 750, 771 (6th Cir. 2016) (citation omitted). While this is a high bar, "so long as a [plaintiff] pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *U.S. ex rel. SNAPP, Inc. v. Ford*

5

*Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

The Sixth Circuit has emphasized that "Rule 9(b) should be interpreted in harmony with Rule 8's statement that a complaint must only provide 'a short and plain statement of the claim.'" *Id.* at 503 (quoting Fed. R. Civ. P. 8(a)). It has also cautioned that "[Rule 9(b)] should not be read to defeat the general policy of simplicity and flexibility in pleadings contemplated by the Federal Rules." *Id.* (citation omitted); *see U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007) ("*Bledsoe* II") ("When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading . . ."). Therefore, "[a]lthough conjecture and speculation are insufficient under Rule 9(b), [a court] must construe the complaint in the light most favorable to the plaintiff [and] accept all factual allegations as true." *Prather*, 838 F.3d at 771 (citations omitted).

## III.  ANALYSIS

The entirety of Plaintiffs' complaint rests on three factual allegations:  (1) Ginnie Mae is listed as an investor in the MERS system for Plaintiffs' loan, and no corresponding assignment from MERS to Ginnie Mae has been recorded in the Hamilton County land records; (2) CMG declined to disclose Ginnie Mae's investor status in response to Plaintiffs' QWR; and (3) no UCC-1 financing statement has been filed under Plaintiffs' names. As explained below, even accepted as true, these allegations do not support a plausible claim for relief under any of Plaintiffs' theories.  (*See* Doc. 26, at 6–8, 12).

### A.  MERS's Role and Lawful Transfer of Beneficial Rights to Ginnie Mae

Plaintiffs' core grievance—pervading all six counts—is that Ginnie Mae is an investor in their loan but has no recorded interest in the Hamilton County land records, and that CMG and

MERS therefore lack authority to enforce the Deed of Trust.  (*See id.*)  This argument is foreclosed by well-settled Tennessee and federal law.

"MERS is a company that provides mortgage recording services to lenders and allows lenders to trade the mortgage note and servicing rights on the market, with MERS maintaining electronic recordings of each transaction."  *See Thompson v. Bank of America, N.A.*, 773 F.3d 741, 748 (6th Cir. 2014) (citation omitted).  MERS is regularly named as the beneficiary for the original lender and its successors and assigns on recorded deeds of trusts.  *See id.* at 749.  This structure is specifically designed so that when beneficial interests in a promissory note are transferred in the secondary market, corresponding assignments need not be recorded in local land records.  *See id.* ("[A] promissory note is a negotiable instrument . . . [and] [a] note can be sold or assigned to another party who then receives the right to enforce the instrument. . . . regardless of whether it is recorded.").  Tennessee state and federal courts have consistently upheld the validity of MERS's role as nominee for a lender's successors and assigns and as beneficiary under a deed of trust.  *See id.* at 749–50 (citing *Samples v. Bank of Am., N.A.*, No. 3:12-CV-44, 2012 WL 1309135, at *3–4 (E.D. Tenn. Apr. 16, 2012) (collecting cases)).

The Deed of Trust here, which Plaintiffs attached to their complaint, explicitly identifies MERS as "beneficiary" solely as nominee for CMG and CMG's "successors and assigns," and was properly recorded with the Hamilton County Register of Deeds on July 18, 2025.  (Doc. 26-4 at 1–2.)  Because the Deed of Trust already names MERS as beneficiary for CMG and all successors and assigns, no separate recorded assignment to Ginnie Mae was required.  *See Thompson*, 773 F.3d at 750–51.

Additionally, Plaintiffs' argument that securitization or transfer to Ginnie Mae creates a fatal "separation" between the Note and the Deed of Trust—such that neither CMG nor MERS

7

can enforce the Note—is an argument the Sixth Circuit has explicitly rejected. In *Dauenhauer v. Bank of New York Mellon*, the court confirmed it is "well-settled under Tennessee law that the transfer of a note automatically carries with it the lien created by the accompanying deed of trust." 562 F. App'x 473, 479 (6th Cir. 2014), (citing *W.C. Early Co. v. Williams*, 186 S.W. 102, 103–04 (Tenn. 1916)). Securitization alone "does not render a note or deed of trust unenforceable and does not alter a borrower's obligation to pay back his loan." *Id.* at 480 (citation omitted).

Because Plaintiffs' split-interest and cloud-on-title theories fail as a matter of law, Plaintiffs have failed to state a claim for quiet title/declaratory relief, conversion (to the extent it rests on MERS/securitization authority), and unjust enrichment/restitution. Each of these "claims" relies on the securitization-and-split-interest allegations, and no additional factual allegations in those counts provide an independent basis for relief. (*See* Doc. 26, at 11–19.)

### B. CMG's Response to Plaintiff's QWR does not Support Fraud, TCPA, or Unjust Enrichment Claims.

Plaintiffs argue that CMG's failure to disclose Ginnie Mae's investor status in its August 26, 2025 QWR response was fraudulent concealment and constituted an unfair or deceptive practice under the TCPA. (Doc. 26, at 15–17, 19–20.) This argument fails on multiple independent grounds.

First, RESPA is the statutory scheme that governs QWRs. *See* 12 U.S.C. § 2065(e)(1)(A) (stating borrowers may utilize a QWR to request from lenders any "information relating to the servicing of [a] loan"). RESPA defines "servicing" to mean "receiving any scheduled periodic payments from a borrower . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." 12 U.S.C. § 2065(i)(3).

Other courts have found that requests for information about the identity of loan investors or note holders do not relate to "servicing" within the meaning of RESPA. *See, e.g., Kelly v. Fairon & Assocs.*, 842 F. Supp. 2d 1157, 1160 (D. Minn. 2012) (citation omitted) ("Requests for information pertaining to the identity of a note holder or master servicer do not relate to servicing."); *see also DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1108 (D. Minn. 2010) (stating "ownership of the loan" is unrelated to servicing). Therefore, CMG's written declination stating that, "[t]he remaining information requested is beyond the scope permitted by RESPA" appears to be compliant with the governing statute and Plaintiffs fail to otherwise identify how CMG mislead or omitted material facts under the TCPA.[3] (Doc. 26–6, at 1.)

Second, the First Amended Complaint expressly disclaims any standalone RESPA cause of action, acknowledging that "references to 12 U.S.C. § 2605(e) are pled solely as part of the factual and legal context for Defendants' duties relevant to Plaintiffs' common-law fraud and concealment claims." (Doc. 26, at 16.) Plaintiffs nonetheless attempt to use RESPA to define a duty of disclosure for their state-law fraud claim. But if the disclosure Plaintiffs sought was not required by RESPA, then CMG had no statutory duty to make it, and CMG's lawful declination

---

[3] In opposing the motion to dismiss (Doc. 34), Plaintiffs raise a challenge under the Truth In Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), stating "TILA requires a servicer, upon written request, to provide the obligor with the name, address, and telephone number of the owner of the obligation or the master servicer 'to the best knowledge of the servicer.'" (Doc. 34, at 6.) Plaintiffs raise no claims under TILA in their operative complaint. However, even if the Court did consider this argument, Plaintiffs do not allege any damages flowing from CMG's response to the QWR. *See Marais v. Chase Home Fin.,* LLC, 736 F.3d 711, 720 (6th Cir. 2013) (affirming dismissal of TILA and RESPA claims for failing to "allege a sufficient link between the alleged actual damages and [defendant]'s deficient response to [the] QWR"). Additionally, Plaintiffs do not allege any facts to suggest that they ever sent a QWR to MERS. Therefore, to the extent any claims against MERS assert wrongdoing for failure to respond to the QWR, those claims will be dismissed.

under RESPA cannot be transformed into tortious fraudulent concealment simply by relabeling it.

Third, Plaintiffs' fraud and fraudulent concealment claim fails to satisfy Rule 9(b)'s heightened pleading standard. Plaintiffs identify the August 26, 2025 QWR response as the allegedly fraudulent communication, but that response discloses that CMG Mortgage, Inc. is the loan owner/assignee and servicer, provides a transaction history, and encloses a copy of the Deed of Trust. (*See* Doc. 26-6.) CMG also explicitly stated that it was declining to provide any of the additional information based on its understanding of the statutory scope of QWR disclosures. (*Id.* at 1.) Explicitly stating that specific information is not included is not a fraudulent misrepresentation or a material omission. Plaintiffs do not allege that CMG made any false statement of fact; the claim is that CMG did not volunteer information it stated it believed it was not legally required to disclose. That does not satisfy the "who, what, when, where, and how" standard for fraud. *Greer*, 114 F.4th at 614–15.[4]

Fourth, Plaintiffs appear to base their TCPA claim on the same conduct—that CMG's allegedly deceptive QWR responses omitted investor information, thereby "split[ting]" interests between "the economic owner of the Note" and "the parties appearing in the land records and on monthly statements." (Doc. 26, at 6; *see also id.* at 20.) Because CMG's QWR response was legally compliant and the split-interest theory fails as a matter of law (*see* Section IV.A, *supra*), there is no plausible allegation of an "unfair or deceptive" act or practice under the TCPA. *See*

---

[4] Plaintiffs' reliance on *Hodge v. Craig*, 382 S.W.3d 325, 342–44 (Tenn. 2012), and *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436 (Tenn. 2012), for their fraudulent-concealment theory likewise does not alter the analysis. Even accepting that one who voluntarily undertakes to speak must not suppress material facts, CMG clearly noted it was declining to provide additional information about investor identity. (*See* Doc. 26-6, at 1.) Plaintiffs do not allege any facts to show CMG suppressed any facts, material or otherwise.

10

Case 1:25-cv-00349-TRM-MJD   Document 41   Filed 04/28/26   Page 10 of 14
PageID #: 326

Tenn. Code Ann. § 47-18-104; *see also Tucker v. Sierra Builders*, 180 S.W.3d 109 (Tenn. Ct. App. 2005) (citing *Morris v. Mack's Used Cars*, 824 S.W.2d 538, 540 (Tenn. 1992) ("[O]ne of the express purposes of the TCPA is to provide . . . state law remedies to consumers victimized by unfair or deceptive business acts . . .").

Finally, Plaintiffs' unjust-enrichment claim rests on the theory that CMG received securitization proceeds and simultaneously collected mortgage payments, and therefore allegedly "obtain[ed] multiple recoveries on the same underlying debt obligation." (Doc. 26, at 18.) This theory likewise fails to state a plausible claim. Securitization of a mortgage loan does not relieve borrowers of their obligation to repay the loan. *See Dauenhauer*, 562 F. App'x at 479–80. "Rather, securitization creates a separate contract, distinct from a plaintiff's debt obligations under the [Note]." *Id.* at 480 (citation modified) (citation omitted). Plaintiffs signed a note obligating them to make monthly payments to CMG as lender; CMG's separate financial arrangements with investors do not affect that obligation. *See id.* at 480 ("Securitization would not absolve a plaintiff from having to make payments on his loan or somehow shield plaintiff's property from foreclosure.") (citation modified). To hold otherwise would permit borrowers to escape lawful debt obligations simply by pointing to normal secondary-market activity, a result that Tennessee and federal courts uniformly reject.

### C. The Deed of Trust was Properly Perfected

Plaintiffs also argue that the Deed of Trust is unenforceable because no UCC-1 financing statement has been filed under Plaintiffs' names. (*See* Doc. 26, at 7–8, 11–26.) This argument reflects a fundamental misunderstanding of the applicable recording scheme.

UCC-1 financing statements perfect security interests in personal property under Article 9 of the Uniform Commercial Code. Real property transactions—including mortgages and deeds of trust—are governed by Tennessee's recording statutes, not Article 9. Tenn. Code Ann. § 66-

11

24-101(a)(8) (deeds of trust are eligible for registration); *Id.* § 66-26-103 (unrecorded deed of trust is null and void as to subsequent bona fide purchasers).  The proper method to perfect a deed of trust on real property in Tennessee is to register it with the local county Register of Deeds.  *Id.* § 66-24-101.

Defendants did exactly that.  The Deed of Trust was recorded with the Hamilton County Register of Deeds on July 18, 2025.  (*See* Doc. 26-4, at 26.)  The absence of a UCC-1 financing statement is not only unsurprising—it is entirely expected and legally appropriate.  It reflects that the transaction involves real property, not personal property.  The UCC-11 searches Plaintiffs obtained therefore have no bearing on the validity or enforceability of the Deed of Trust.  Accordingly, all claims premised on the absence of a UCC-1 financing statement will be dismissed.

### D.  CMG is the Holder of the Note and Therefore Entitled to Enforce It

Finally, Plaintiffs contend that Defendants are not persons "entitled to enforce" the Note within the meaning of Tenn. Code Ann. § 47-3-301 and therefore allege that CMG "wrongfully collected and retained Plaintiffs' payments . . . which constitutes conversion[.]"  (Doc. 26, at 14.)

A promissory note is a negotiable instrument that may be enforced by "the holder of the instrument."  Tenn. Code Ann. § 47-3-301.  A "holder" is "the person in possession of [the] negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."  *Id.* § 47-1-201(20).  CMG is identified in the Note as the lender to whom payments are to be made.  (*See* Doc. 31-1, at 1.)  The Note further states that anyone "who is entitled to receive payments under this Note is called the "Note Holder."  (*Id.*)  CMG is thus the "holder" of the Note with authority to enforce it.  *See* Tenn. Code. Ann. § 47-1-201(20).  Consequently, Plaintiffs fail to state a claim for conversion against any of the Defendants.

12

Plaintiffs argue that the Court should not consider the Note or alternatively should convert the motion into a motion for summary judgment and allow discovery on chain-of-custody and endorsement.  (*See* Doc. 34, at 3–4.)  The Court disagrees.  The Note is "referred to in [the] Complaint and central to the claim[s]."  *See Bassett*, 528 F.3d at 430 (noting a court may consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein").

Plaintiffs' entire lawsuit turns on who holds and may enforce the Note.  Therefore, the Court may—and does—consider it.  Because CMG's possession and holder status are established by the face of the document, conversion to a summary judgment motion and further discovery on this point would serve only to delay the inevitable.

**E.  Leave to Amend Would be Futile**

Ordinarily, courts in the Sixth Circuit should freely grant leave to amend under Federal Rule of Civil Procedure 15(a).  However, leave to amend may be denied when amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  An amendment is futile if it cannot survive a Rule 12(b)(6) motion to dismiss.  *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citation omitted).  The legal defects identified in this Opinion are not curable by additional factual allegations.  Plaintiffs' claims fail because, on the undisputed facts they themselves pled and the documents they attached, all three of their core legal theories—the MERS/split-interest theory, the QWR-fraud theory, and the UCC-1 theory—are legally untenable as a matter of Tennessee and federal law.  No amendment could alter the lawful structure of MERS beneficiary relationships, CMG's statutory right to decline non-servicer

QWR disclosures, or the real-property recording requirements under Tennessee law.  Dismissal with prejudice is therefore appropriate.[5]

## IV.     CONCLUSION

For the foregoing reasons, Defendants CMG Mortgage, Inc., and Mortgage Electronic Registration Systems, Inc.'s motion to dismiss (Doc. 30) is **GRANTED**.  Plaintiffs' First Amended Complaint (Doc. 26) is **DISMISSED WITH PREJUDICE** in its entirety. Additionally, Defendants' original motion to dismiss (Doc. 18), Plaintiffs' motion for a Rule 26(f) conference (Doc. 37), and Defendants' motion to stay a Rule 26(f) conference are all **DENIED as moot**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[5] The Court further notes that Plaintiffs' filings have included citations to cases that do not exist as cited, including "*Pope v. Redwing*, 370 S.W.3d 708 (Tenn. 2012)" and "*First Nat. Bank of Louisville v. Brooks Farms, LLC*, 624 S.W.3d 601 (Tenn. Ct. App. 2020)."  (*See* Doc. 31, at 3 n.1; Doc. 35, at 4.)  Plaintiffs have filed a notice of errata acknowledging some of these errors. (Doc. 36.)  The Court does not find it necessary to address sanctions at this time, but Plaintiffs are reminded that Federal Rule of Civil Procedure 11 applies to pro se litigants and that citation to non-existent authority undermines the credibility of otherwise legitimate arguments.  The Court encourages Plaintiffs, should they seek legal counsel in any future proceedings, to ensure that any legal citations are carefully verified.